UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v.-

KEITH TAYLOR,

Defendant.

Case No. 1:24-cr-00524 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

On August 18, 2025, Defendant Keith Taylor ("Defendant," or "Taylor") pleaded guilty to wire fraud and tax evasion. Taylor contends now that he is innocent, that he accepted the plea only because he feared going to trial with ineffective counsel, and that all his statements to the contrary during his plea allocution were false and made out of desperation — including his confirmations, during that allocution, that his statements were true and willingly made. He moves to withdraw his plea and, instead, proceed to trial. For the following reasons, the motion is DENIED.

## BACKGROUND

### I. The Charges

On June 4, 2024, Taylor was charged by complaint (the "Complaint") with wire fraud, Dkt. 1 ¶ 1; aggravated identity theft, *id.* ¶ 2; and multiple counts of tax evasion, *id.* ¶¶ 3-32. On or about September 4, 2024, he was indicted on the same charges. *See* Dkt. 15. On April 3, 2025, a grand jury returned a superseding indictment, *see* Dkt. 39, and on July 29, 2025, a grand jury returned a second superseding indictment, Dkt. 68 ("S2," or the "Second Superseding Indictment"). In connection with the wire fraud count, the Second Superseding Indictment alleged that Taylor had "embezzled more than a million dollars" from the charitable organization for which he was "acting as president," S2 ¶ 1, the Modest Needs Foundation ("Modest Needs"),

*see* Dkt. 16 at 1. According to the Second Superseding Indictment, Taylor used those funds "for his own personal expenses, including to pay for upscale meals, high-end electronics, medical expenses, and a luxury apartment." S2 ¶ 1. He also allegedly "ma[de] false and misleading statements to donors . . . regarding, among other things, the [Modest Needs]'s income and expenses, the composition and role of the [Modest Needs]'s board of directors," and Modest Needs's registration status, legal compliance, and tax filings. *Id.* Furthermore, Taylor allegedly engaged in this same conduct while on pretrial release in this matter. *Id.* With respect to Counts Three through Ten, tax evasion, the Second Superseding Indictment alleged that Taylor had evaded his income tax obligations from 2017 to 2024 by "using business accounts to pay [for] personal expenses," failing to file his tax returns, and failing to report taxable income to the IRS. *Id.* ¶ 3.[1]

Taylor was arrested on June 11, 2024, shortly after the Complaint was filed, and was released on bail the same day. *See* Dkt. 4 at 9.

## II. Taylor's Counsel

Attorney Brian Ketcham ("Ketcham") entered an appearance in this matter on June 11, 2024. *See* Dkt. 5. Taylor had previously retained Ketcham in 2023 to represent Modest Needs in an IRS investigation. *See* Dkt. 105 ("Taylor Aff.," or the "Taylor Affirmation") ¶¶ 3-4. On September 6, 2024, and with Taylor's consent, the Court modified his bail conditions to prohibit his employment at Modest Needs. *See* Dkt. 19. On the same date, the Court set a schedule for the parties' substantive motions. *See* Minute Entry, *United States v. Taylor*, No. 24-cr-00524 (JLR) (S.D.N.Y. Sept. 6, 2024). On October 30, 2024, at Ketcham's request, the Court extended that schedule to give the parties additional time to review discovery. *See* Dkt. 24. On December

[1] The Second Superseding Indictment again included an aggravated identity theft charge, S2 ¶ 2, which is not discussed here as it did not become part of Taylor's eventual plea agreement.

3, 2024, the Court extended the schedule for the same reason, again at Ketcham's request. *See* Dkt. 26. On January 6, 2025, the Court again extended that schedule, this time because the Government informed the Court that Ketcham was "dealing with a personal medical issue" that made him unable to seek the extension himself. Dkt. 28. On January 13, 2025, Ketcham wrote to advise the Court that Taylor would not be filing substantive motions. *See* Dkt. 29. On February 5, 2025, the Court set the matter down for trial to commence May 12, 2025. *See* Dkt. 30. The Court also set a briefing schedule for motions in limine. *Id.*

On March 18, 2025, Ketcham advised the Court that, despite the parties' plea negotiations, Taylor still "intend[ed] to proceed with a jury trial." Dkt. 31 at 1. He also requested that the Court appoint CJA counsel for Taylor, who could no longer afford Ketcham's fees because bail conditions precluded him from earning income from Modest Needs. *Id.* at 1-2. The Court ultimately appointed CJA attorney Sabrina Shroff ("Shroff") as co-counsel to represent Taylor alongside Ketcham and also approved CJA funding to be applied to Ketcham's ongoing fees. *See* Minute Entry, *United States v. Taylor*, No. 24-cr-00524 (JLR) (S.D.N.Y. Mar. 24, 2025); *see also* Minute Entry, *United States v. Taylor*, No. 24-cr-00524 (JLR) (S.D.N.Y. Mar. 20, 2025).

On March 26, 2025, the Government filed its motions in limine. *See* Dkt. 34. On April 11, 2025, Shroff wrote to the Court to advise that "[o]ne defense counsel in this matter [had been] hospitalized on an emergent basis with a serious medical condition" and, as a result, she and Ketcham were unable to respond to the Government's motions or file Taylor's trial exhibits and witness list. Dkt. 43. She further advised that it was "unclear if trial c[ould] proceed on May 12, 2025." *Id.* The Court extended Taylor's time to respond until April 18, 2025, and adjourned the trial to June 23, 2025. *See* Minute Entry, *United States v. Taylor*, No. 24-cr-00524

(JLR) (S.D.N.Y. Apr. 14, 2025). Ketcham filed Taylor's motion in limine and opposition to the Government's motions in limine on April 18, 2025. *See* Dkts. 45-46.

**A. The June 10, 2025 Hearing**

On June 9, 2025, the Court received a letter from Ketcham stating that "he would be in inpatient care for seven days and then available to work after that." Dkt. 58 ("June 10 Tr.") at 2:23-3:1. Just before receiving that letter, the Court received a letter from Shroff indicating that Taylor may wish to relieve Ketcham as counsel. *See id.* at 2:23-3:3. Also on June 9, 2025, the Court received a letter from the Government arguing that Taylor, in violation of his bail conditions, was continuing to draw funds from Modest Needs's bank accounts and use them to pay his personal expenses. *See* Dkt. 54. The Government asked the Court to revoke Taylor's pretrial release. *Id.* at 3-4.

At a hearing on June 10, 2025, at which Ketcham did not appear, Shroff explained that she had been unable to contact Ketcham for more than a week and that, in her last conversation with his spouse, she had learned that he "was unconscious and [his spouse] was taking him to the hospital." June 10 Tr. at 4:6-8; *see id.* at 3:10-4:8. She also noted that Ketcham was "lead counsel" in Taylor's defense, that he "ha[d] the entire file," and that he "carried the laboring oar." *Id.* at 4:9-11. With respect to Taylor's potential desire to relieve Ketcham as counsel, Shroff opined that Taylor would be "correct if he were to tell the [C]ourt that he was not properly represented." *Id.* at 4:17-20; *see also id.* at 8:10-17 (Shroff noting that Ketcham "was the final decider" on "legal issues such as . . . advice of counsel defense or, for example, what positions to take on certain stipulations"). Indeed, Shroff concluded that, due to Ketcham's absence, "we are precariously close to a 2255, if this trial date were to stick." *Id.* at 5:5-6.[2] She told the Court that

[2] *See* 28 U.S.C. § 2255(a) (permitting federal prisoners to move to "vacate, set aside or correct [a] sentence" that is "imposed in violation of the Constitution"); *Morales v. United States*, 635

she would need "some level of adjournment," and perhaps assistance from additional CJA counsel, "should the trial go forward without Mr. Ketcham." *Id.* at 9:21-24. The Court declined to appoint additional counsel. *Id.* at 9:25-10:14. Instead, the Court proposed adjourning the trial from June 23, 2025, to September 8, 2025. *See id.* at 18:25-19:1. The Court asked Shroff whether such an adjournment "would . . . give [her] enough time," "given [her] experience," to "get up to speed on all the tasks that [she] presumed Mr. Ketcham to be doing and would have to take over from him," and Shroff responded, "I think that would be a date that's fine." *Id.* at 19:8-20. The Court clarified that it "presume[d] that Mr. Ketcham [wa]s not going to be involved in this trial and trial preparation," that the purpose of the adjournment was to give Shroff "enough time to prepare" Taylor's defense alone, and that it understood Shroff was "well and able to do this case." *Id.* 19:23-20:12. Shroff did not disagree. Shroff had also confirmed, earlier in the hearing, that she already had access to discovery materials in the case. *See id.* at 9:14-16. The Government agreed to the adjournment, *id.* at 20:15-19, and the Court granted it, *id.* at 21:5-21.

Also at the hearing, the Court heard extensive argument from Shroff concerning Taylor's alleged bail violations. Shroff argued that, rather than remand Taylor into custody, the Court could impose various additional bail conditions, including that he "no longer have access to the internet," *id.* at 38:22, and "give up his smartphone and use a flip phone," *id.* at 50:4; that he "no longer have access to any bank account" other than those preapproved, *id.* at 38:23-39:15; and that he submit to GPS monitoring, rather than home confinement, to address any risk of flight, *id.* at 62:9-20. The Court found that there was clear and convincing evidence that Taylor had violated his bail conditions and probable cause to believe that he had continued to commit wire

F.3d 39, 43 (2d Cir. 2011) ("[I]nadequate representation is a basis for relief under section 2255[.]").

fraud, *id.* at 52:23-53:2; *see also id.* at 53:2-55:14; nevertheless, the Court "reluctantly" imposed the conditions Shroff suggested instead of revoking Taylor's pretrial release. *Id.* at 57:10; *see id.* at 57:3-11. With respect to the no-internet condition, Shroff argued that it would be improper to additionally require that Taylor turn over all his computer equipment, because doing so would hamper his ability to participate in his defense. The following exchange took place:

> THE COURT: Ms. Shroff, how would [Taylor] be able to use his computer to communicate with his lawyers if he didn't have internet or if he surrenders his router?
>
> MS. SHROFF: No, I don't want him to use the computer to communicate with me. I can talk to him. I want him to use the computer to help write things out I want him to write, to review discovery by an external hard drive, to review 3500 [materials] through the external hard drive.

*Id.* at 60:18-25; *see also id.* at 62:10-13 (noting, in advocating for GPS monitoring instead of home confinement, that Taylor is "going to have to work with his lawyers. He's going to have to come to sit down and work with his lawyers, especially if he has no internet access in his own home."). Accordingly, the Court ordered that Taylor surrender his router, but not the remainder of his equipment, because the Court "appreciate[d] that he may need to use computers in order to prepare for trial." *Id.* at 63:2-5. Finally, the Court ruled on several of the parties' motions in limine. Those rulings included granting, in part, portions of Taylor's motion to preclude the Government from offering certain evidence. *Id.* at 97:8-13, 111:19-22; *see also id.* at 112:4-10.

Consistent with his representation to the Court that he would be "available to work" following his time in inpatient care, *id.* at 2:23-3:1, Ketcham continued representing Taylor in this matter, including by appearing at a July 14, 2025 status conference. *See* Minute Entry, *United States v. Keith Taylor*, No. 24-cr-00524 (JLR) (S.D.N.Y. Jul. 14, 2025). There, Ketcham and Shroff advised the Court that Taylor would not assert an affirmative advice-of-counsel defense, but that he would present some evidence concerning the presence of counsel. *See* Dkt.

63. Thereafter, Ketcham and Shroff filed a letter, on Ketcham's letterhead, explaining that Taylor would present evidence at trial "that he attempted to come into tax filing compliance in or about September 2019" by sending his draft tax returns to a tax attorney and asking whether they were "OK to mail." Dkt. 64 at 1. Ketcham and Shroff explained that his evidence was relevant to the question of Taylor's willfulness in allegedly evading his tax obligations. *Id.* at 1-2.

## III. The Plea Agreement, Plea Hearing, and Allocution

On August 15, 2025, Taylor entered into a plea agreement with the Government. *See* Dkt. 109-1 (the "Agreement"). Ketcham was present when Taylor signed the Agreement, *see* Dkt. 80 ("Plea Tr.") at 18:25-19:11, and Ketcham signed the Agreement as Taylor's counsel, *see* Agreement at 10. The Agreement set forth a list of conduct for which, "[i]n consideration of" Taylor's plea, the Government would not further prosecute him. *Id.* at 2. That conduct by Taylor included "(i) defrauding the Modest Needs Organization ("Modest Needs") and donors to Modest Needs . . . by . . . embezzling Modest Needs's funds for [his] own personal expenses . . . and . . . making false and misleading statements to donors, including . . . on Modest Needs's tax forms regarding, among other things, Modest Needs's income and expenses . . .; (ii) continuing to defraud Modest Needs and donors to Modest Needs . . . while on pretrial release . . .; (iii) knowingly using, without lawful authority, the names of other persons, including by falsely identifying [them] on the Modest Needs website and IRS Forms 990 as being members of a purported board of directors for Modest Needs, and representing that those individuals had reviewed and approved [his] salary . . .; [and] (iv) evading his obligation to pay his federal income taxes to the IRS for the calendar years 2017 through 2024." *Id.* The Agreement further stated that Taylor "agree[d] not to contest at sentencing any of the facts set forth in subsections (i) through (iv) of the preceding section, or any of the facts set forth in the Complaint," *id.* at 3, and that Taylor "agreed that [he would] not file a direct appeal or otherwise

challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, [his] conviction," including on the basis that "the admitted conduct does not fall within the scope of the statute" of conviction, *id.* at 7. Moreover, the Agreement stated that Taylor "hereby acknowledges that [he] has accepted this Agreement and decided to plead guilty because [he] is in fact guilty." *Id.* at 8.

Three days after Taylor signed the Agreement, Ketcham appeared with Taylor at a change of plea hearing on August 18, 2025. *See* Minute Entry, *United States v. Taylor*, No. 24-cr-00524 (JLR) (S.D.N.Y. Aug. 18, 2025); *see generally* Plea Tr.[3] There, the Court allocuted Taylor as to the Agreement and his reasons for entering into it. The Court placed Taylor under oath. Plea Tr. at 3:12-21. He testified that his mind was clear, and that he was not taking any medications or under the influence of any substances that would impair his ability to understand the proceeding. *Id.* at 5:6-6:19.

The Court explained to Taylor the many Constitutional rights he would give up by pleading guilty, and Taylor confirmed that he understood them all and still wished to plead guilty. *Id.* at 8:9-12:10. Taylor also confirmed that he had read the Agreement, discussed the Agreement with counsel, and fully understood the Agreement before signing it. *Id.* at 19:6-19. The Court directed his attention to the list of conduct discussed above, and Taylor confirmed that he had agreed not to contest, at sentencing, any of the facts set forth in subsections (i)-(iv) of the Agreement. *Id.* at 21:19-22:5. Taylor also testified that no one had threatened him or forced him to sign the Agreement. *Id.* at 24:5-7.

The Court then asked Taylor to explain, "in [his] own words[,] what [he] did that ma[de] [him] believe [he was] guilty of Counts One and Three through 10 of the superseding indictment." *Id.* at 24:16-18. With respect to Count One, Taylor explained as follows:

---

[3] Shroff, engaged at another proceeding, was not present. *See* Plea Tr. at 2:4-8.

> THE DEFENDANT: I was the president of a charitable foundation since 2002. The foundation was based in Manhattan, New York. Beginning in about 2015, up to June of this year, I used funds donated to the foundation for some of my personal expenses by intentionally transferring funds electronically from the foundation's accounts to my personal accounts. Some of this activity continued after I was charged in this case and was on pretrial release.
>
> I also made statements on the foundation's website and on the foundation's federal tax filings, specifically IRS 990, that were misleading and not entirely truthful. I admit that I knew what I did was wrong.

*Id.* at 25:1-12. The Court asked Taylor several follow-up questions:

> THE COURT: When you engaged in the behavior you described, did you participate in that fraud knowingly and willfully?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Did you have the specific intent to engage in that fraud?
>
> THE DEFENDANT: May I confer with counsel, your Honor?
>
> THE COURT: You may.
>
> (Defense counsel and defendant conferred)
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Thank you. I think you mentioned that there were transfers of funds; is that correct?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Were those through wire transfers?
>
> THE DEFENDANT: Yes, your Honor.

*Id.* at 25:21-26:10.

Taylor proceeded to the tax evasion charges, Counts Three through Ten. He explained:

> THE DEFENDANT: Since 2017, through 2024, I did not file federal income tax returns. By not doing so, I did not report or pay taxes on the income I earned from the foundation or the income I obtained from using the foundation's bank accounts to pay for personal expenses.

> During these periods, I resided in Manhattan, New York, and I knew I was required to file federal income taxes and report the full measure of my income to the IRS, and I admit that I willfully failed to do so. The period included calendar years 2017, 2018, 2019, 2020, 2021, 2022, 2023, and 2024.

*Id.* at 26:13-23.

The Court asked a short series of final follow-up questions:

> THE COURT: Thank you. Mr. Taylor, when you did the things you described, both Count One and Counts Three through 10, did you know what you were doing was wrong and illegal?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Very well. I know you're speaking with notes, which is perfectly fine, but those notes reflect your statement, correct?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Are they truthful and accurate statements?
>
> THE DEFENDANT: To the best of my knowledge, your Honor, yes.

*Id.* at 26:24-27:10.

Ketcham represented to the Court that he had spoken "at length" with Taylor about his plea, that he believed Taylor understood the ramifications of that plea, and that he did "[n]ot at all" doubt Taylor's competence to plead. *Id.* at 6:20-7:6. Ketcham further represented that he knew of no valid defenses Taylor could assert to contest the charges against him and prevail at trial, *id.* at 27:16-19; that there was "a sufficient factual predicate" for Taylor's plea, *id.* at 33:8-10; and that he knew of no reason the Court should decline to accept the plea, *id.* at 33:11-13. The Court asked Taylor whether he had "had enough chance to discuss th[e] superseding indictment and the charges [he] intend[ed] to plead guilty to with [his] lawyers and any possible defenses [he] might have to those charges," and he told the Court that he had. *Id.* at 7:22-8:1. The Court asked Taylor whether Ketcham or Shroff explained to him "the consequences or what it means to plead guilty," and he told the Court that they did. *Id.* at 8:2-5. The Court further

asked Taylor whether he was "satisfied with [Ketcham's and Shroff's] representation of [him]," and he told the Court that he was. *Id.* at 8:6-8.

The Court also asked the Government to "summarize what [its] evidence would show with respect to Mr. Taylor's behavior" at trial. *Id.* at 27:21-22. The Government explained that its evidence would include Modest Needs's "website and the IRS forms 990, which contain [Taylor]'s misrepresentations about his salary"; testimony from Modest Needs employees establishing that Taylor alone was responsible for those misrepresentations; bank records tracing funds from Modest Needs's accounts to Taylor's, and testimony from Modest Needs employees establishing that Taylor had sole control over those accounts; financial records demonstrating that Taylor used Modest Needs funds to pay his personal expenses such as "food, alcohol, and grocery deliveries" to Taylor's "home address," Taylor's "own medical treatments," and "over $20,000 of charity money being spent at a particular jewelry store," such that Taylor ultimately "spent millions of dollars more of [Modest Needs]'s money than he stated was his salary"; and that, in addition to the foregoing conduct, Taylor failed to file tax returns from 2017 through 2024 and misrepresented or otherwise concealed his salary on IRS forms. *Id.* at 27:24-32:13. Taylor affirmed that he had heard the Government's evidence, and that he had engaged in the conduct it had described. *See id.* at 32:20-33:1.

Finally, Taylor asserted that he pled guilty to Counts One and Three through Ten, and the Court accepted his plea "because [Taylor] acknowledge[d] [he was], in fact, guilty . . ., and there [wa]s a sufficient factual predicate for [his] plea of guilty, and because [the Court was] satisfied that [he] kn[e]w [his] rights, including [his] right to go to trial and [he was] aware of the consequences of what it means to plead guilty, including the sentence that may be imposed, and because [the Court] f[ou]nd [he was] knowingly and voluntarily pleading guilty." *Id.* at 33:14-34:4.

## IV. The February 10, 2026 Hearing

Ketcham died in January 2026. *See* Dkt. 95 ("Feb. 10 Tr.") at 2:11-15. On January 23, 2026, the Court received a letter from Taylor seeking new counsel in light of "concerns he had with his representation for purposes of his sentencing, as well as additional concerns regarding [Ketcham] who [was, by then,] deceased." *Id.* at 2:7-16. The Court scheduled a hearing to discuss Taylor's letter. *See* Dkts. 87-91. On February 6, 2026, the Court received a letter from the Government seeking Taylor's remand because, it argued, Taylor was continuing to collect donations to Modest Needs. Feb. 10 Tr. at 10:20-22. Accordingly, as it did at the June 10, 2025 hearing, the Court dealt with both issues at the February 10, 2026 hearing.

As to counsel, Taylor told the Court that he and Shroff "had a breakdown in the attorney-client relationship," and he believed the breakdown to be beyond repair. *Id.* at 6:22-25. Before relieving Shroff, the Court noted that "there [wa]s a motion on the table, a remand motion, and Ms. Shroff ha[d] in the past addressed a similar motion to remand in the pretrial context and so has some familiarity," and thus "if [Taylor] still wish[ed] to change counsel from Ms. Shroff, Ms. Shroff perhaps should still remain involved in the response to the remand application." *Id.* at 5:1-10. The Court also noted that "Shroff is an experienced CJA counsel" who had "argued very vigorously for her clients." *Id.* at 6:6-8. On Taylor's request, the Court relieved Shroff as counsel and appointed a new CJA attorney, Evan Lipton ("Lipton"), *id.* at 8:8-13, but Taylor asked that Shroff remain in court to "discuss with Mr. Lipton . . . anything regarding the remand motion." *Id.* at 9:2-4.

As to remand, the Government argued that Modest Needs was still collecting donations from donors, and that the Modest Needs website — which was, or until recently had been, still up and soliciting donations — reflected the organization's receipt of those donations. *See id.* at 13:24-15:20. The Government noted that Taylor "should have been detained at his plea," but

that it had not asked for that outcome only because it had been engaged in "ongoing conversations with Mr. Ketcham" regarding Taylor's post-plea obligations. *Id.* at 13:16-24. The Court, after hearing argument from both the Government and Lipton, noted that it had declined to remand Taylor at the June 10, 2025 hearing based on Shroff's vigorous advocacy. *See id.* at 31:18-25. However, given the Government's evidence of Modest Needs's ongoing solicitation and receipt of donations, which violated Taylor's bail conditions, the Court remanded Taylor. *Id.* at 32:10-34:8. The Court also scheduled sentencing for April 8, 2026. *Id.* at 34:7-8.

## V. The Present Withdrawal Motion

Taylor, through Lipton, requested and received two adjournments to the sentencing date, *see* Dkts. 97-100, and the Government requested and received a third adjournment, such that sentencing was ultimately scheduled for July 28, 2026, *see* Dkt. 102. On July 16, 2026, the date his sentencing submission was due, Taylor filed the instant motion to withdraw his plea. *See* Dkt. 103; Dkt. 104 ("Br."); Taylor Aff. In it, he argued that he is not guilty; that he had consistently maintained his innocence since entering his plea; and that he had pleaded guilty only upon learning that Ketcham "was gravely ill and had not prepared for trial" and that Shroff, "appointed four months earlier, was also unprepared," and he therefore feared the "hollow exercise" of "a trial with unprepared counsel." Br. at 1-2. The Government filed its opposition on August 12, 2026. Dkt. 109 ("Opp."). Taylor filed a reply on August 19, 2026. Dkt. 110 ("Reply"). The motion is fully briefed.

On September 15, 2026, the Court held a hearing on Taylor's motion at which the Court invited the parties to offer any evidence that they wished to present. *See* Dkt. 111; Minute Entry, *United States v. Taylor*, No. 24-cr-00524 (JLR) (S.D.N.Y. Sept. 15, 2026). Taylor appeared at that hearing with his counsel. Shroff, despite having been relieved as counsel, was also present

in the back of the courtroom. Taylor did not call Shroff as a witness or present any evidence at the hearing.

Having considered the papers, the record, and the parties' oral argument at the September 15, 2026 hearing, the Court now rules on Taylor's motion.

## LEGAL STANDARD

A defendant may withdraw his guilty plea before sentencing only when he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). There is "no absolute right to withdraw [the] plea." *United States v. Williams*, 23 F.3d 629, 634 (2d Cir. 1994). Rather, a court considering such an application "considers, *inter alia*: (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion; and (3) whether the government would be prejudiced by a withdrawal of the plea." *United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016) (omission adopted) (quoting *United States v. Schmidt*, 373 F.3d 100, 102-03 (2d Cir. 2004) (per curiam)); *accord United States v. Bright*, No. 21-2453, 2023 WL 2469767, at *2 (2d Cir. Mar. 13, 2023) (summary order). "Courts may also look to whether the defendant has raised a significant question about the voluntariness of the original plea." *Rivernider*, 828 F.3d at 104 (quoting *Schmidt*, 373 F.3d at 103). Indeed, "when a defendant asserts that the decision to plead guilty was involuntary, the 'defendant must raise a significant question about the voluntariness of the original plea,' and '*a fortiori* the court must focus on voluntariness.'" *United States v. Lam Peralta*, 792 F. App'x 68, 69 (2d Cir. 2019) (summary order) (citation omitted) (first quoting *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997); and then quoting *United States v. Rosen*, 409 F.3d 535, 548 (2d Cir. 2005).

This is a "stringent" standard, "because 'society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of

our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice.'" *United States v. Doe*, 537 F.3d 204, 211 (2d Cir. 2008) (quoting *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997)); *accord United States v. Rose*, 891 F.3d 82, 85 (2d Cir. 2018). It is the defendant's burden to establish a valid basis to withdraw his plea, *see Rivernider*, 828 F.3d at 104, and whether to permit the defendant to do so is a decision "committed to the district court's discretion, 'a discretion justified by the "feel of the case" possessed by the judge who observed the defendant at the taking of the plea,'" *United States v. Garcia*, 648 F. Supp. 3d 480, 483 (S.D.N.Y. 2022) (alteration adopted) (quoting *United States v. Saft*, 558 F.2d 1073, 1082 (2d Cir. 1977)).

## DISCUSSION

Taylor provides four bases for withdrawing his plea: first, that he is not guilty of the charges in the Second Superseding Indictment, *see* Br. at 12-17; second, that ineffective assistance from Ketcham and Shroff rendered his guilty plea neither knowing nor voluntary, *see id.* at 17-20; third, that this ineffective assistance "fully explain[s]" his delay in seeking to withdraw his plea, *id.* at 20-21; and fourth, that the Government "will suffer no material prejudice from withdrawal," *id.* at 21. The Court addresses these bases in turn.

### I. Taylor's Assertion of Innocence

The Court begins with Taylor's assertion that he is not guilty of the charged conduct.

"[S]tatements at a plea allocution carry a strong presumption of veracity." *Torres*, 129 F.3d at 715. That presumption is so strong that "a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made." *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001). For that reason, an assertion of innocence "must be supported by evidence. A defendant's bald statements that simply contradict what he said at his plea

allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Overton*, 24 F.4th 870, 879 (2d Cir. 2022) (quoting *United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001)); *see also id.* ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution carry a strong presumption of verity and are generally treated as conclusive in the face of the defendant's later attempt to contradict them." (quoting *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999))).

Taylor presents no evidence to support his assertion of innocence, aside from his own statement that he subjectively believed he "was authorized to receive" all the funds Modest Needs paid him — that is, not just the funds "formally documented as [his] salary," but also those in excess of that salary. Taylor Aff. ¶ 3; *see* Br. at 12. As to the latter funds, Taylor explains that he "treated [them] as a personal debt to the organization that [he] was repaying." Taylor Aff. ¶ 3; *see* Br. at 12. Thus, he concludes, he "did not take funds [he] believed [he] was unauthorized to receive." Taylor Aff. ¶ 3; Br. at 12. He points to no evidence that corroborates these self-serving explanations, even after the Court gave him an opportunity to present any such evidence at a hearing, which is insufficient to support his belated innocence claim. *See, e.g.*, *United States v. Kolaczynski*, No. 16-cr-00834 (NSR), 2018 WL 377342, at *2 (S.D.N.Y. Jan. 10, 2018) (denying motion to withdraw plea where, "[i]n his affidavit in support of his motion, [d]efendant merely contradict[ed] the sworn-to statements he made during his plea allocution hearing" and "proffer[ed] no evidence, other than his self-serving statement, in support of his claim of innocence"); *United States v. Ramirez*, No. 22-cr-00522 (GHW), 2025 WL 3512114, at *13 (S.D.N.Y. Dec. 8, 2025) (finding that innocence factor "weigh[ed] against" defendant where he "ha[d] not made a factual argument that supports a legally cognizable defense — he merely assert[ed] that he [wa]s innocent in a conclusory manner"); *United States v. Jean Baptiste*, No. 15-cr-00854 (SHS), 2021 WL 2983238, at *4 (S.D.N.Y. July 14, 2021) (rejecting innocence

claim where defendant "set forth no facts to support" it), *aff'd*, No. 22-2693, 2024 WL 1846623 (2d Cir. Apr. 29, 2024) (summary order). Moreover, even on its face, Taylor's post-plea explanation is patently illogical: If he believed that the funds Modest Needs paid him in excess of his salary were additional compensation, then there would be no reason for him to treat those same funds as a debt requiring repayment. *See* Compensation, Black's Law Dictionary (12th ed. 2024) ("*Compensation* consists of wages and benefits in return for services. It is payment for work." (quoting Kurt H. Decker & H. Thomas Felix II, *Drafting and Revising Employment Contracts* § 3.17, at 68 (1991)). Finally, even if Taylor had presented evidence in support of his authorization theory, that defense would apply only on the allegation that Taylor embezzled funds from Modest Needs — it would have no bearing on the allegations that Taylor defrauded donors and evaded his tax obligations by misstating his salary on tax forms and the Modest Needs website.

In his Reply, Taylor contends that he asserted his innocence to the Probation Office during his interview for his Presentence Report, and that this assertion is "objective evidence" of his innocence. Reply at 3. It is not. It is, perhaps, evidence that Taylor asserted his innocence before the present motion — and thus the Presentence Report is relevant, if at all, on the question of delay — but it is not evidence that Taylor is, in fact, innocent of the charged conduct. *See Lam Peralta*, 792 F. App'x at 70 (explaining that "we require defendants to provide evidence supporting a claim of innocence," and holding that defendant failed to present such evidence by "merely recount[ing] that he expressed his innocence throughout his arrest and court proceedings, except when he signed the plea agreement . . . and when he changed his plea to guilty"). And instead of providing that corroborating evidence, Taylor devotes the bulk of his innocence argument to cataloguing certain purported ambiguities and other deficiencies in his allocution that, he says, undermine the validity of the inculpatory statements he made at the plea

hearing and therefore bolster his current assertion of innocence. Given that Taylor has not provided any evidence to support his innocence assertion, these arguments are largely beside the point. But even considering them, the Court finds them unpersuasive.

First, Taylor notes that the Court asked Ketcham whether he knew of any valid defense that would prevail at trial or knew of any reason that Taylor should not be permitted to plead guilty, and that Ketcham answered both questions in the negative. Taylor complains that Ketcham's answer "conflate[d] two distinct questions," because "[w]hether a defense will prevail at trial is counsel's professional judgment," but "[w]hether a defendant has the right to assert that defense at trial is not counsel's decision to make." Br. at 13-14. However, the Court did not invite Ketcham to opine on Taylor's right to assert defenses at trial. And indeed, the Court could not have been clearer in explaining to Taylor that he had the right to proceed to trial and assert any defenses he wished to assert. *See* Plea Tr. at 8:9-10:2 (advising Taylor that he had "the right to plead not guilty" and to, instead, proceed to "a speedy and public trial by jury on the charges contained in the indictment" at which his "lawyer could offer evidence on [his] behalf if [he] so desired," including by "hav[ing] subpoenas issued and other process used in order to compel or require witnesses to come in and testify in [his] defense").

Taylor next turns to the prepared statement he read at the plea hearing. That statement, he says now, only "describe[d] the act of transfer" of funds to him from Modest Needs; it omitted any statement as to "whether he believed he was authorized to make those transfers," and indeed "[t]he word 'unauthorized' appears nowhere in [his] prepared statement." Br. at 14-15. But the Court's question immediately after Taylor's prepared statement addressed any possible ambiguity created by that omission: The Court characterized "the behavior [he] described" as a "fraud" and asked him whether he had "participate[d] in [it] knowingly and willfully," and Taylor answered that he had. Plea Tr. at 25:21-24. Taylor did not dispute the

Court's use of the word "fraud" to describe the wire transfers in question, which is the same word that was repeatedly used in the Agreement that he signed. Taylor further engages in pedantry when he asserts that (1) he told Ketcham "he would not say he had defrauded anyone because it was not true," and thus "[t]hose words were not part of his statement," and that (2) Taylor's answer as to knowledge and willfulness referred only to the Court's question about Taylor's "behavior," which was ambiguous because of Taylor's omission. Br. at 15. The bottom line is, whether he included the word "fraud" in his prepared statement or not, Taylor affirmed under oath that he had "knowingly and willfully" engaged in "fraud." Plea Tr. at 25:21-24. Taylor's post hoc arguments now are, therefore, insufficient to undo his prior sworn affirmations, especially given that Taylor — a highly educated man with a doctorate in English Literature, *id.* at 4:1-6, whose demeanor in court demonstrated that he was following the Court's questions and responding unambiguously — confirmed repeatedly that he understood his rights and nonetheless wished to plead guilty. *See Juncal*, 245 F.3d at 171 (holding that "later self-serving and contradictory testimony" does not undermine presumption that "a plea was knowingly and intelligently made"); *cf. United States v. Rodriguez*, 286 F. App'x 760, 761 (2d Cir. 2008) (summary order) (finding, on post-sentence motion, that district court had "more than a sufficient factual basis" to accept plea where district court "twice described to [defendant] the offense as one which was perpetrated in order to force someone else to pay a ransom" and where defendant, "who is well-educated, indicated that he understood his plea and had discussed it with his attorney").

The Court also asked Taylor at the plea hearing whether he had "the specific intent to engage in that fraud." Plea Tr. at 25:25-26:1. Taylor argues now that, when he paused to confer with Ketcham before answering affirmatively, he told Ketcham that he "had not defrauded anyone," and Ketcham "told [him he] had to answer yes." Taylor Aff. ¶ 14; Br. at 15. To

Taylor, "[t]his moment is the clearest evidence in the transcript that the allocution was something [he] was guided through," because "[a] defendant who had genuinely formed the specific intent to defraud would not need to consult counsel before acknowledging it." Br. at 15-16. The Court does not agree. First, there are any number of reasons for a defendant to confer with counsel while testifying in court; indeed, Taylor also conferred with Ketcham when the Court asked Taylor what medications he takes, *see* Plea Tr. at 4:23-5:2, yet, according to Taylor's logic, a defendant who takes medications would not need to consult counsel before identifying those medications for the Court. Second, the Court asked Taylor about specific intent only after he had admitted — without hesitation, and without conferring with Ketcham — that he had knowingly and willfully engaged in fraud. *See id.* at 25:21-26:5. Based on that sequence of events, and Taylor's ready answer to the first question, the Court does not credit Taylor's narrative that he paused at the specific intent question because he had qualms about answering it. Third, even assuming that Taylor relayed privately to Ketcham during the colloquy that he had "not defrauded anyone," Taylor Aff. ¶ 14, that statement is vague, inasmuch as it does not clearly map to, let alone undercut, any of wire fraud's elements, which do not include successfully defrauding a particular person or personally benefitting from the inculpatory conduct. *See United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (per curiam) ("The essential elements of mail or wire fraud are (1) a *scheme* to defraud, (2) money or property as the *object* of the scheme, and (3) use of the mails or wires to further the scheme." (alteration adopted) (emphases added) (quoting *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015))); *see also Kousisis v. United States*, 605 U.S. 114, 121 (2025) ("A defendant commits federal wire fraud . . . only if he both 'engaged in deception' and had 'money or property' as 'an object' of his fraud." (quoting *Ciminelli v. United States*, 598 U.S. 306, 312 (2023))).

Similarly, Taylor stresses that, in his prepared statement, he admitted only that he knew what he had done was "wrong" — he theorizes that a person "may" believe he did something wrong "in the ordinary sense" without necessarily having formed the specific intent to commit a crime. Br. at 15. Again, though, to the extent Taylor left any loophole there, the Court closed it by asking the following clarifying question and receiving the following response:

> THE COURT: . . . Mr. Taylor, when you did the things you described, both Count One and Counts Three through 10, did you know what you were doing was wrong *and illegal*?
>
> THE DEFENDANT: Yes, your Honor.

Plea Tr. at 26:24-27:3 (emphasis added).

Next, Taylor finds fault with "the Court's final cleanup question" during his allocution on the wire fraud charge. Br. at 16. The question at issue came after the Government had summarized what its trial evidence would show that Taylor did. *See* Plea Tr. at 27:21-32:19. After that summary, the Court asked Taylor whether he had "heard [the Government] go over what would be said at trial if there were a trial," and Taylor said that he had. *Id.* at 32:20-22. The Court then briefly summarized the Government's summary:

> THE COURT: She talked about misrepresentations regarding salary, oversight by director[s], transfer of charity funds, et cetera. Did you engage in that behavior?
>
> THE DEFENDANT: Yes, your Honor.

*Id.* at 32:23-33:1. To Taylor, the Court's "use of 'et cetera' invited an omnibus 'yes' to a broad summary of contested conduct." Br. at 16. But the Court asked Taylor whether he "engage[d] in the[] behavior" described, and he said that he did. Plea Tr. at 32:23-33:1. And he admitted to each specific element of wire fraud. *Compare Weaver*, 860 F.3d at 94 ("The essential elements of mail or wire fraud are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." (alteration adopted) (citation

omitted)), *with* Plea Tr. at 25:1-26:10 (Taylor admitting that he used Modest Needs funds for "personal expenses" and "intentionally transferr[ed] [those] funds electronically" to himself from Modest Needs's accounts, that he "participate[d] in that fraud knowingly and willfully," that he had "specific intent to engage in that fraud," and that the transfers of funds "[w]ere . . . through wire transfers").

Taylor also argues that he testified only that his prepared statement was, "[t]o the best of [his] knowledge," truthful and accurate, Plea Tr. at 27:4-10, which was "hedged [and] not unequivocal" and, thus, demonstrates that he "did not fully embrace [the statement] as his own." Br. at 16. The Court does not agree with this characterization of the testimony. After Taylor confirmed that the notes reflected "[his] statement," Plea Tr. at 27:4-7, he professed that the statement was true to the best of his knowledge, and his knowledge is the relevant consideration.

Finally, as to the tax evasion charges, Taylor argues that he admitted only that he had willfully failed to file tax returns, but that he "did not admit any affirmative act of evasion of tax assessment." Br. at 16. Again, Taylor is splitting hairs. The Government set forth the elements of tax evasion, *see* Plea Tr. at 13:9-21; explained that its case against Taylor with respect to wire fraud included that he made misrepresentations on Modest Needs's "IRS forms," *id.* at 30:20, such as by "misstat[ing] his salary," *id.* at 32:4-5; and explained that its case against Taylor with respect to tax evasion would include "all of" its wire fraud evidence, *id.* at 31:24-25. Indeed, the Government noted that its tax evasion case "would also include other IRS forms, including those forms 990 and W-2s filed by [Taylor], which misstate his salary." *Id.* at 32:2-5. Taylor, in response to the Court's question, confirmed that he had made misrepresentations as to his salary on tax forms, as the Government alleged. *See id.* at 32:23-33:1 (Taylor affirming that he had "engage[d] in . . . behavior" such as "misrepresentations regarding salary"). That is a sufficient affirmative act to serve as a factual predicate for tax evasion. *See United States v. Josephberg*,

562 F.3d 478, 490-91 (2d Cir. 2009) ("'An affirmative act of evasion includes any conduct, the likely effect of which would be to mislead or to conceal. Such conduct includes false statements made to Treasury representatives for the purpose of concealing unreported income.' Accordingly, 'concealment of assets or covering up sources of income, and handling of one's affairs to avoid making the records usual in transactions of the kind' are examples of conduct sufficient to create an inference of evasion." (internal quotation marks and citations omitted) (first quoting *United States v. Klausner*, 80 F.3d 55, 62 (2d Cir. 1996); and then quoting *Spies v. United States*, 317 U.S. 492, 499 (1943))); *see also United States v. Terry*, 763 F. App'x 118, 120 (2d Cir. 2019) (summary order) (affirming denial of plea-withdrawal motion where, "[w]hile the district court did not explicitly explain the elements of tax evasion, all three elements were discussed in detail, and the record certainly does not indicate that a miscarriage of justice has occurred").

Even if the Court credited Taylor's arguments concerning the plea hearing — and it does not — there would still be the written Agreement itself, in which Taylor agreed that he was guilty of the charges and that, among other things, he had "defraud[ed]" Modest Needs and its donors, "embezzle[ed] Modest Needs's funds for [his] own personal expenses," and "ma[de] false and misleading statements to donors, including . . . on Modest Needs's tax forms." Agreement at 2. He also agreed that he "continu[ed] to defraud Modest Needs and donors to Modest Needs . . . while on pretrial release," and "evad[ed] his obligation to pay his federal income taxes to the IRS" from 2017 to 2024. *Id.* Indeed, the Court expressly directed Taylor's attention to that section of the Agreement and asked if he understood that he was agreeing not to contest any of these facts, and he affirmed that he understood. Plea Tr. at 21:19-22:5. Taylor signed that Agreement three days before appearing at the plea hearing, and did so in the presence of counsel. Agreement at 10; *see* Taylor Aff. ¶ 13. Taylor does not argue here that he did not

understand the Agreement when it was given to him, just as he did not claim any confusion about the Agreement at his plea hearing, state that it was not an accurate recitation of his agreement with the Government, or indicate in any way that he wished to withdraw it. *See* Plea Tr. at 19:12-19 (Taylor testifying that he read and understood the Agreement before signing it); *id.* at 23:13-25 (Taylor testifying that the Agreement "constitute[d] [his] complete and total understanding of the entire agreement between [him] and the government"). This further supports the validity of Taylor's plea over his present contrary assertions of innocence. *United States v. Braithwaite*, 242 F. App'x 765, 767 (2d Cir. 2007) (summary order) (holding that defendant's waiver of appeal was "knowing and voluntary" where defendant "certified by his signature on his plea agreement that he had read and understood the terms of the document, which included the wavier of his appeal rights," and where defendant's "counsel at the time attested that he had read and explained the plea agreement to [defendant], and that [defendant] had understood its terms"); *accord Paredes-Cisneros v. United States*, 869 F. Supp. 2d 402, 405 (S.D.N.Y. 2012).

Therefore, Taylor has failed to successfully assert his innocence and overcome the presumption of validity that his sworn plea-hearing admissions of guilt carry.

## II. The Voluntariness of the Plea

Taylor next argues that his guilty plea was neither knowing nor voluntary because the legal representation he received from Ketcham and Shroff was constitutionally inadequate. *See* Br. at 17-20. "To establish ineffective assistance of counsel, a defendant must demonstrate that (1) his counsel's representation 'fell below an objective standard of reasonableness,' and (2) this deficient performance caused prejudice to the defendant — that is, 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Overton*, 24 F.4th at 880 (quoting *Strickland v. Washington*, 466 U.S. 668, 688,

694 (1984)). This is a "highly demanding" and "rigorous" standard, *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011) (first quoting *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986); and then quoting *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001)), and Taylor does not meet it.

Taylor starts with the June 10, 2025 hearing, at which Shroff advised the Court that she had been unable to reach Ketcham and that, in her view, Taylor was inadequately represented by counsel. *See* Section II.A, *supra*. Indeed, Shroff told the Court that "we are precariously close to a 2255, if this trial date were to stick." June 10 Tr. at 5:4-6; *accord* Br. at 17. Taylor concludes that "[t]wo months before the plea, co-counsel was telling the Court that lead counsel had not properly represented Mr. Taylor and that she could not try the case without additional help." Br. at 17. But that is precisely why the Court, at that same appearance, adjourned trial for long enough to give Shroff time to prepare for a trial without Ketcham. *See* June 10 Tr. at 18:25-19:1; *id.* at 19:8-20:12. Shroff expressly agreed that the adjournment gave her enough time for that preparation, without Ketcham and without additional CJA counsel. *Id.* at 19:8-20. And while Taylor notes that Shroff did not appear at his plea hearing, and thus he had "only a gravely ill lead counsel present," Br. at 17-18, Taylor himself states that, "[d]espite everything, when Mr. Ketcham was present [he] felt some stability; his history with the case and knowledge of [Taylor's] defense gave [Taylor] confidence," Taylor Aff. ¶ 12.[4] That is, Taylor appeared at his plea hearing with his preferred attorney.

Taylor also contends that the bail conditions imposed at the June 10 hearing rendered this adjournment meaningless, because, without internet and without income, he could not participate

[4] Indeed, as the Background section of this Opinion illustrates, Ketcham had been involved in Taylor's defense for years, and his motions in limine resulted in a favorable pretrial ruling for Taylor in this Court.

in or fund his defense. *See* Br. at 19. Of course, he overlooks that the alternative to those conditions was incarceration given that the Court found that he was continuing to engage in the charged behavior while on pretrial release. That aside, and as Shroff compellingly argued before the Court, the conditions may have made certain aspects of Taylor's participation in his defense less convenient, but they did not "strip[] [him] of any ability to contribute" to that defense, as he now argues. *Id.*; *see* June 10 Tr. at 60:18-25 (Shroff successfully arguing that Taylor did not need internet to consult with her, but that he did need his computer "to help write things out" and "review discovery" and other materials "by an external hard drive"). Taylor's contention that those bail conditions rendered him unable to "fund any aspect of his defense in the months before trial," Br. at 18, is mystifying given that, by then, the Court had approved CJA funds to pay for both Ketcham's and Shroff's fees, thereby giving Taylor two free lawyers, *see* Minute Entry, *United States v. Taylor*, No. 24-cr-00524 (JLR) (S.D.N.Y. Mar. 20, 2025); Minute Entry, *United States v. Taylor*, No. 24-cr-00524 (JLR) (S.D.N.Y. Mar. 24, 2025). Even if the Court had not approved that funding, Taylor misrepresents the bail conditions by claiming they included "the elimination of any income." Br. at 19; *see also* Reply at 6 (arguing that the bail conditions "eliminated [his] ability to work"). The Court declined the Government's request for home detention, *see* June 10 Tr. at 60:2-4; 64:21-65:3, and its bail conditions prohibited Taylor from accessing *Modest Needs* funds; they did not foreclose Taylor from finding work and income elsewhere, *see id.* at 57:23-58:4 ("I am imposing the condition that [Taylor] does not have any access whatsoever to Modest Needs bank accounts or any money that is held by Modest Needs.").

Further weighing against Taylor's current position that his attorneys provided assistance so ineffective as to render his plea neither knowing nor voluntary is the fact that he told the Court, under oath at his plea hearing, that he was satisfied with Ketcham's and Shroff's

representation. *See* Plea Tr. at 8:6-8. According to Taylor, however, this testimony is of little value, because the Court allocuted him only on the question of whether anyone had coerced his plea and "did not reach" whether his legal representation undermined the voluntariness of his plea. Br. at 18. That is simply incorrect. The Court not only asked Taylor whether he had been "threatened . . . or forced . . . to plead guilty" (and he answered no), Plea Tr. at 24:5-7, but also asked Taylor whether he was "satisfied with [Ketcham's and Shroff's] representation" (and he answered yes), *id.* at 8:6-8. The Second Circuit has held, under similar circumstances, that a defendant's post-plea claim of involuntariness was not credible. *See Torres*, 129 F.3d at 716 (finding that the district court "correctly refused to credit [defendant]'s claim of involuntariness in light of [his] statements at the plea hearing that he faced no pressure or force, coupled with his complete failure to raise any concerns with the [c]ourt about the quality of his counsel or his counsel's preparedness for trial. During his plea allocution, [defendant] answered no when specifically asked whether he had been coerced, pressured, or forced to plead guilty."); *see also United States v. Gunn*, 419 F. App'x 106, 109 (2d Cir. 2011) (summary order) (holding that defendant "cannot overcome the heavy burden that his plea was involuntary" given that "the district court established that [he] had a full opportunity to discuss his case with his counsel and to discuss the consequences of entering a plea of guilty, and that [he] was satisfied with his counsel's representation" (alterations adopted) (quotation marks omitted); *United States v. March*, 382 F. App'x 76, 78 (2d Cir. 2010) (summary order) (holding that "inadequate representation did not invalidate defendant's plea or provide a basis for which it might be withdrawn" where defendant "affirmed under oath the adequacy of his former counsel's representation, and stated that he was satisfied and had sufficient time to discuss the charges and his decision to plead guilty"). Taylor also says that he was merely "following Mr. Ketcham's lead" when he told the Court he was satisfied with Ketcham's and Shroff's representation. Br. at

13. This is, yet again, a conclusory and self-serving statement, and the Court does not credit it. Moreover, despite Taylor's current assertion that he was "frightened" by the prospect of going to trial with Shroff as lead counsel because he "found her manner intimidating," Taylor Aff. ¶ 12, his actions at the February 10 hearing suggested otherwise: There, after successfully removing Shroff from his defense, Taylor immediately requested that she remain by his side to defend him from the Government's attempt to remand him into custody. Feb. 10 Tr. at 9:2-6. Whatever Taylor may have thought about Shroff interpersonally, that request indicates he trusted her advocacy skills far more than he now claims. And with good reason: Those skills had previously kept him out of jail. *See* Feb. 10 Tr. at 31:22-25.[5]

Taylor also argues that Ketcham and Shroff "failed to investigate the defense [he] wished to assert," namely, "that he was authorized to receive the funds at issue." Br. at 19. But he does not explain what investigatory steps they failed to take to develop that defense. He identifies, for example, no witnesses they should have interviewed, and no Modest Needs organizational documents they should have analyzed. His conclusory assertion of this purported failing is not enough. *See White v. United States*, No. 24-cv-05590 (JSR) (KHP), 2025 WL 2962617, at *5 (S.D.N.Y. Oct. 21, 2025) (rejecting argument that counsel failed to investigate defendant's alibi defense where defendant "supplied no names of alibi witnesses and failed to attach any of the photographs he mentions giving to counsel," and "g[ave] the [c]ourt absolutely no basis to

[5] Taylor further represents that Shroff "yelled at [him] on more than one occasion," Taylor Aff. ¶ 12. Even if she did — and Taylor presents no factual allegations to support or contextualize that claim — Taylor fails to explain why that makes her legal services constitutionally inadequate or supports his motion to withdraw his plea. *See Juncal*, 245 F.3d at 172 ("[D]efense counsel's blunt rendering of an honest but negative assessment of appellant's chances at trial, combined with advice to enter the plea, [does not] constitute improper behavior or coercion that would suffice to invalidate a plea."); *Strickland*, 466 U.S. at 693 ("Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.").

understand the purported alibi defense," but instead "ma[de] only conclusory and self-serving allegations that his counsel was presented with evidence of his purported alibi and failed to investigate it"), *report and recommendation adopted*, 2026 WL 221170 (S.D.N.Y. Jan. 28, 2026).

Moreover, the duty to investigate "does not . . . compel defense counsel to investigate comprehensively every lead or possible defense," and, "as a general matter, when there is 'reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.'" *Greiner v. Wells*, 417 F.3d 305, 321 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 691); *see also United States v. Montilla*, 85 F. App'x 227, 231 (2d Cir. 2003) (summary order) ("To the extent that [a] defendant argues that defense counsel could have 'conducted more vigorous pre-trial discovery,' such claims do not 'establish the ineffectiveness of trial counsel.'" (quoting *United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987))). Here, the Government's own investigation included interviewing Modest Needs's "purported board members," all of "who[m] undermined any purported authorization defense," and the Government "produced portions of those interview memoranda to defense counsel prior to the plea proceeding." Opp. at 21 n.7; *see also* Reply at 10 ("The purported board members . . . were interviewed by the Government before the plea and their interview memoranda were produced to defense counsel."). Even if Taylor believed he was permitted to authorize himself, *see* Reply at 7-8 (stating that Taylor's authorization theory is based on his own "reasonabl[e] belie[f] [that] he was authorized to receive compensation in his role as [Modest Needs's] founder and sole operational officer"), Ketcham had previously represented Taylor in the monthslong IRS investigation into Modest Needs that gave rise to the criminal Complaint in this matter, and Ketcham "present[ed] [Taylor's] defense" to IRS counsel in that investigation, Taylor Aff. ¶¶ 4-5. In that way,

Ketcham was deeply involved with Taylor's interactions with the IRS about his compensation and the distributions Modest Needs made to him, and Taylor attests in his affirmation that he and Ketchum later "met regularly at his office and by phone to develop a defense strategy" in this resulting criminal matter. *Id.* ¶ 6. Those direct conversations with Ketcham, who had the benefit of this significant background knowledge, constituted relevant investigation into the viability of Taylor's authorization theory, as did Ketcham's legal work in connection with the IRS investigation. *See id.* ¶ 4 ("From approximately June through September 2023, I worked closely with [Ketcham] to produce documents and respond to the IRS allegations."). Furthermore, the fact that Taylor's own purported board members undermined his authorization theory would seriously undercut its viability as a defense, and Ketcham and Shroff would have been justified in declining to pursue it further. *See Greiner*, 417 F.3d at 319 ("In assessing performance, we must apply a 'heavy measure of deference to counsel's judgments," and "[t]hus, a lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision[.]" (alteration adopted) (first quoting *Strickland,* 466 U.S. at 691; and then quoting *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996)).

Therefore, Taylor's ineffective assistance of counsel argument is unavailing, and the Court finds that his plea was knowing and voluntary.

## III. The Amount of Time Between the Plea and the Motion

Next, while Taylor acknowledges that "the amount of time that has elapsed between the plea and the motion," *Rivernider*, 828 F.3d at 104, is an important factor in establishing his entitlement to withdraw a plea, *see* Br. at 11-12, 20-21, he argues that his delay is "fully explained by the circumstances of [his] representation," *id.* at 20. Given the Court's determinations above that Taylor has failed to justify the withdrawal of his plea, the question of

his delay in seeking that withdrawal is of lesser import. *See Lam Peralta*, 792 F. App'x at 70-71 ("Even when defendants quickly request to withdraw their guilty pleas, we have found such requests insufficient when the defendant has not otherwise demonstrated grounds to justify withdrawal."); *see also id.* at 71 n.1 (citing additional summary orders in which the Second Circuit "ha[d] ruled similarly"). Nevertheless, the Court disagrees with Taylor that his motion is sufficiently timely.

The timeliness with which a defendant seeks to withdraw his plea bears on the sincerity of the request. As the Second Circuit has explained, "a swift change of heart may indicate a plea made in haste or confusion," but a lapse in time following the plea suggests that it "was entered voluntarily." *Doe*, 537 F.3d at 213 (alteration adopted) (quoting *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992))). Here, as an initial matter, the Court notes that Taylor does not state definitively when he first told Ketcham that he wished to withdraw his plea. In his Brief, he says he did so "immediately after the plea." Br. at 20. In the Taylor Affirmation, he says more vaguely that he did so "[s]hortly after the plea." Taylor Aff. ¶ 15. Finally, in his Reply, Taylor says he "told Ketcham the same day [as the plea] or shortly thereafter." Reply at 9. There is no corroboration for these vague assertions. Moreover, Taylor does not anywhere assert that he informed Shroff that he wanted to withdraw his plea or asked her to prepare any such motion; he concludes only that, after Ketcham's death, "[n]o counsel was pursuing the withdrawal motion, and there was no path to filing one." Br. at 21. Therefore, Taylor's submission does not make entirely clear just where the Court should start the clock on the timing of the present motion.

What is clear from the record, however, is that eleven months passed between Taylor's plea and the instant request to withdraw it. *Compare* Agreement at 10 (dated August 15, 2025), *and* Plea Tr. at 1 (dated August 18, 2025), *with* Br. at 22 (dated July 16, 2026). Courts in this Circuit routinely hold that delays of even half that length are significant enough to weigh against

a motion to withdraw a plea. *See, e.g.*, *United States v. Albarran*, 943 F.3d 106, 123 (2d Cir. 2019) (affirming denial of withdrawal motion where there was a "four-month lapse between [defendant's] guilty plea and his motion to withdraw"); *United States v. Thomas*, 651 F. Supp. 3d 685, 693 (S.D.N.Y. 2023) (holding that "the elapsed time factor . . . militate[d] against withdrawal" where "[d]efendant waited approximately four months before seeking to withdraw his guilty [plea]"); *United States v. Wilson*, 828 F. Supp. 2d 679, 685 (S.D.N.Y. 2011) (finding that delay factor "d[id] not favor" defendant where "[m]ore than two months elapsed" between plea and motion), *aff'd*, 523 F. App'x 30 (2d Cir. 2013) (summary order); *United States v. Rampersant*, 704 F. Supp. 3d 373, 377 (E.D.N.Y. 2023) (holding that defendant's "nearly fourteen-month delay undermines his argument for relief"); *Lam Peralta*, 792 F. App'x at 70 (affirming district court's conclusion that one month lapse in time, while comparatively minimal, "[w]as a factor weighing slightly against" withdrawal (quotation marks and citation omitted)). Taylor cites no case with delay of the duration here. Moreover, given that the Court has rejected Taylor's argument that his representation was ineffective, that same argument fails to excuse his delay in filing the present motion.

Therefore, the amount of time between Taylor's plea and his attempt to withdraw it further undermines his motion.

## IV. Prejudice to the Government

Finally, Taylor argues that the Government "will suffer no material prejudice" if he withdraws his plea, because "[t]his case is document-driven" and the Government's witnesses remain available. Br. at 21. The Court notes, to the contrary, that the Government would have to reassemble its evidence and re-prepare witnesses whose memories may have faded after an eleven-month delay, as well as work with victims who had understood that the matter was concluded. *See, e.g.*, *United States v. Carreto*, 583 F.3d 152, 157 (2d Cir. 2009) ("[T]he

Government would have been prejudiced by a withdrawal of the guilty pleas, as the Government surely would have encountered difficulties were it required to re-assemble its evidence after more than a year's delay."); *accord United States v. Obiorah*, 536 F. App'x 53, 55 (2d Cir. 2013) (summary order); *see also Jean Baptiste*, 2021 WL 2983238, at *5 (finding prejudice to government after eleven-month delay where "the Government advised its witnesses that the case against the defendant was resolved and that there would be no trial" (citation omitted)). However, in light of the foregoing findings, the Court need not find prejudice to the Government to warrant denial of this motion. *See Maher*, 108 F.3d at 1529 ("Only if the defendant makes such a showing [of a fair and just reason to withdraw the plea] will the government be required to show prejudice, and then the court must exercise its discretion in balancing these competing concerns."); *accord Lam Peralta*, 792 F. App'x at 71; *see also Rosen*, 409 F.3d at 546 ("The Government is not required to show prejudice when opposing a defendant's motion to withdraw a guilty plea where the defendant has shown no sufficient grounds for permitting withdrawal; however, the presence or absence of such prejudice may be considered by the district court in exercising its discretion." (quoting *Gonzalez*, 970 F.2d at 1100)).

**CONCLUSION**

For all the foregoing reasons, the Court will not permit Taylor to withdraw his plea, and his motion is DENIED. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 103. Sentencing is rescheduled for **October 28, 2026**, at **11:00 a.m.**

Dated: September 24, 2026
New York, New York

SO ORDERED.

Jennifer Rochon
JENNIFER L. ROCHON
United States District Judge